## KUHN v. MORRISON et al.

### (Circuit Court, N. D. Georgia. May 11, 1894.)

1. CIRCUIT COURTS—JURISDICTION—FORECLOSURE SUIT.

When a United States circuit court has jurisdiction, generally, of a controversy, by reason of the parties being citizens of different states, it can entertain a suit for the foreclosure of a mortgage on land within the district for which it sits, and, in such suit, can entertain and determine such pertinent questions as are necessary to give the complainant perfect and full relief, including the question of the superiority of an alleged prior mortgage held by a defendant, although neither complainant nor all the defendants are residents of the district.

2. EQUITY PRACTICE—PARTIES—FORECLOSURE.

When the money, the payment of which is secured by a mortgage, has been advanced in the form of a draft, drawn by one corporation on another, the drawer of such draft is not a necessary party to a suit by the trustee of the mortgage and the drawee of the draft for the foreclosure of the mortgage.

3. USURY—CONFLICT OF LAWS—TENNESSEE STATUTES.

The statutes of Tennessee, under which the lien of a mortgage is lost when the debt it secures is affected with usury, do not affect a mortgage executed in Tennessee, but covering land in Georgia, and securing a note made in Georgia, and payable there, and bearing a rate of interest which, though usurious in Tennessee, is legal in Georgia.

4. SAME.

A note was signed and dated in Georgia. A mortgage, given to secure it, was executed in Tennessee, and both note and mortgage were delivered and the money was paid in the latter state. *Held* that the mortgage was a Tennessee contract, and subject to the laws of that state in respect to usury in the debt secured.

5. SAME.

Under the law of Tennessee, a contract which on its face is usurious will not be enforced, but a contract which requires evidence aliunde to show it to be usurious is void only to the extent of the usury. Accordingly, *held*, in the case of a mortgage securing a note which appeared upon its face to be a Georgia contract, and, as such, not usurious, though the mortgage was executed in Tennessee, but which was shown by the evidence to be a Tennessee contract, that such mortgage and note could be enforced in Tennessee, but to the extent only of the rate of interest allowed by the Tennessee law, which was less than the rate specified in the note.

On Demurrer.

W. L. Eakin and Brown & Spurlock, for complainant.
Payne & Walker and M. H. Clift, for defendants.

NEWMAN, District Judge. This is a bill to foreclose a mortgage on certain lands situated in Catoosa county, in this district, by Kuhn, a citizen of Pennsylvania, who sues on his own behalf and as representative of the American Waterworks & Guaranty Company, Limited, a corporation of the state of Pennsylvania. The defendants are Robert Morrison, a citizen of Ohio, and Samuel E. Green, Edward Scott, Moses Clift, and J. T. Williams, citizens of the state of Tennessee, and John X. Dickert, the latter alleged to be the tenant residing upon the mortgaged land in Catoosa county, and who is a citizen of the state of Georgia, residing in this district. The said tenant, John X. Dickert, was served personally. The other de-

v.75 F.no.3—6

fendants were served under section 8 of the act of 1875 (Supp. Rev. St. p. 84), an order having been granted for that purpose.

1. The first question raised here is that the act under which service was ordered, and under which jurisdiction is claimed, is repealed by the language of section 1 of the act of March, 1887, corrected by the act of 1888. Counsel evidently overlooked the provisions of section 5 of the same act, in which it is expressly provided that section 8 of the act of 1875 is not repealed or affected.

2. It is contended that this mortgage, being usurious under the laws of Tennessee, cannot be enforced, because, by the statutes of that state, the lien of a mortgage is lost when the debt which it secures is affected with usury. Counsel cite De Wolf v. Johnson, 10 Wheat. 367. The answer to this contention is that the note which is secured by the mortgage being foreclosed here was made in Georgia, and, having no other place of payment named, was payable in this state. The matter of interest and usury is controlled by the laws of Georgia, and in this state the rate of interest provided for in the note is legal when stipulated for in writing. The fact that the mortgage was executed in Tennessee would be immaterial when the note which it secures is a Georgia contract.

3. As to the question of citizenship, and the contention that the court is without jurisdiction to grant the relief sought, as against Green, Clift, and Williams, it is sufficient to say that, the complainant and the defendants being citizens of different states, this court has jurisdiction generally of a controversy involving the jurisdictional amount between them. The real estate covered by the mortgage being in this district, the court may, under section 8 of the act of 1875 (Supp. Rev. St. p. 84), take cognizance of the suit to foreclose the mortgage. The court taking cognizance of the foreclosure suit should entertain and determine such other pertinent questions as are necessary to give the complainant mortgagee perfect and full relief. Farmers' Loan & Trust Co. v. Houston & T. C. Ry. Co., 44 Fed. 115; Converse v. Dairy Co., 45 Fed. 18. The question of the superiority of Green's mortgage would seem to be proper matter to be determined in this proceeding. It would be necessary to ascertain and determine the dignity of his mortgage in order to show the extent to which a sale under complainant's mortgage would convey title to the mortgaged real estate. This being the necessity of the situation, and Green being a proper party under recognized equity practice, the fact that he was a citizen of another state would be immaterial; service being made under section 8 of the act of 1875. Morrison, Scott, and Clift, who joined in the mortgage, are certainly proper parties. The demurrer for want of jurisdiction is by Green and Morrison. There is no objection to the jurisdiction on the part of Scott and Williams.

To what extent relief may be granted by the bill is not so clear. It may be said, however, that, as to Green's right to enforce his prior mortgage against Morrison's mortgage, there seems little doubt of the right of this court to act and afford relief. It is not believed that a general judgment against Green could be rendered in this proceeding. The power of the court in the premises is confined to

a determination of such questions as relate to, and are necessary for, the enforcement of complainant's rights under his mortgage. It must also be confined to rights in or to the real estate by virtue of which this court takes cognizance of the suit.

One of the grounds of demurrer by Clift is that the bill is multifarious, "in that it seeks to foreclose an alleged mortgage, and at the same time restrain another defendant from asserting a claim of title adverse to both the alleged mortgagor and mortgagee, that is shown to have accrued prior to the alleged mortgage under which complainant claims." This ground of demurrer has been, in effect, disposed of by what has been stated above. If Green is a proper party for the purpose of ascertaining the extent and dignity of his lien as against complainant's mortgage, the bill is not multifarious, for the reasons stated.

The conclusion is: As to so much of the bill as prays for a general judgment against Green, the demurrer will be sustained; as to the remainder of the bill, the demurrer will be overruled. The extent to which the court can grant relief under the complicated facts set out in the bill must be determined as the cause proceeds.

## On Final Hearing.

### (July 1, 1896.)

The conclusions I have reached in this case will, for lack of time to be more elaborate, be stated in a few paragraphs.

1. I am satisfied that while the City Water Company of Chattanooga, Tenn., might be a proper party to this cause, it is not a necessary or indispensable party. The evidence shows that the money loaned by Kuhn, trustee, to Morrison, was by a draft drawn by the City Water Company of Chattanooga, Tenn., on the American Waterworks & Guaranty Company, Limited, of Pittsburgh, Pa. This latter company is joined as complainant in the bill with Kuhn, trustee. It seems to me that the evidence is sufficient to enable the cause to proceed in its name in connection with Kuhn, trustee, for the enforcement of this debt and mortgage. This being true, the jurisdictional question is out of the way.

2. In my opinion, the facts show that this instrument sought to be foreclosed should be treated as a Tennessee contract. The note which the mortgage secures appears, on the face of it, to have been signed at Ringgold, Ga. The mortgage itself fails to show any place of execution. From the evidence, it seems that the mortgage was prepared in a law office in Chattanooga, Tenn., and executed there; that the note was signed, as it purports to have been, at or about Ringgold, Ga., perhaps on the land in dispute, which was in Georgia; and both the note and the mortgage appear to have been delivered, and the money, or rather the check or the draft, delivered in Chattanooga. So that it is pretty clear that it must be treated as a Tennessee contract. Being a Tennessee contract, is it true, as contended here, that it cannot be enforced under the laws of Tennessee, because of usury? The note on its face bears interest at the rate of 8 per cent. per annum. This would be a good

contract in Georgia.   The legal rate in Tennessee is 6 per cent., and anything over that is usury.   As I understand the decisions which have been cited from the supreme court of Tennessee, where the usury appears on the face of the contract it will not be enforced; but, where it is necessary to resort to proof aliunde to show the usury, the contract is only void to the extent of the usury.   The last case from Tennessee which I have seen on this subject is Hubble v. Improvement Co., 95 Tenn. 585, 32 S. W. 965, which, I think, clearly announces the above .doctrine.   That case is not in conflict with the case of Stewart v. Manufacturing Co., 95 Tenn. 497, · 32 S. W. 464, or Wallace v. Goodlet, 93 Tenn. 598, 30 S. W. 27, cited by counsel for ˚Green and Williams.   I have heretofore held in this case, in ruling on a demurrer, that it appearing on the face of the paper that this note was made in Georgia, even though the bill showed that the mortgage was executed and delivered in Tennessee, the Georgia law would control, and therefore the note was not subject to objection on the ground that it was usurious, as the law of the state where the note was made should control on the question of interest.   It being clear now, however, from the evidence on this final hearing, that this is a Tennessee contract, it must be so enforced.   I shall hold, therefore, that, while this note and mortgage can be enforced, only interest at the rate of 6 per cent. per annum can be collected.                        .

3. The evidence as to taking· possession of this land under the optional contract attached to the mortgage is not sufficient to show that the mortgagee availed himself of his rights under the option, and became a purchaser of the land.   The language of the option is as follows:

"If, within twelve months from this date, the said W. F. Kuhn, trustee, his successor or successors in trust, or his or their assigns, shall notify Robert Morrison and M. H. Clift, or either of us, our heirs or representatives, of his or their desire to purchase all of the land mortgaged, at the price of twenty-five thousand ($25,000) dollars, that the said note of the said Morrison for ten thousand ($10,000) dollars· and any interest that may have accrued up to that time will become, and will be accepted as a cash payment upon said land; and upon the said Kuhn, trustee, his successor or successors in trust, or his or their assigns, executing two notes, due at two and four months, bearing interest from date, payable to Robert Morrison and M. H. Clift,—two-thirds of the whole purchase price to Robert Morrison, and one-third to M. H. Clift, and retaining a mortgage upon said land to secure the purchase money of twenty-five ($25,000) thousand dollars, after deducting said note for ten thousand dollars ($10,000),—that we, Robert Morrison, Edward Scott, and M. H. Clift, will execute a deed to W. S. Kuhn, trustee, his successor or successors in trust, or his or their assignees, conveying all of the said lands to the said W. S. Kuhn, trustee, or his successor or successors in trust, or his or their assignees, with covenants of seisin and a general warranty, so as to vest him or them with the absolute title in fee simple to all of said lands; and, in the event of the application of the said note of the said Morrison for ten thousand dollars to the purchase of said land, the foregoing mortgage will be of no virtue or effect, and will be discharged."

And, again, after providing that 90 days' notice shall be necessary before the mortgage can be foreclosed, it is provided that:

"Neither he nor they will be bound to purchase said land without giving notice to said Morrison and Clift, as aforesaid, within twelve months from this date; nor will he nor they have any right to purchase under this agree-

ment, after the expiration of twelve months from this date, unless said notice is given."

Now, suppose this case was reversed, and Morrison had desired, when this bill was filed, to pay the money, and did not desire to comply with his optional contract, and Kuhn, trustee, had insisted on it; could he, by what is shown to have been done, avoid the effect of his failure to give notice of his desire to purchase, and insist upon title being made to him? Certainly not. So, as it now stands, the necessity for notice of his desire to purchase being clearly stated in the contract, and there being no such notice, complainant is not bound to buy, but is entitled to enforce his mortgage, having given the proper 90 days' notice. Conceding the most favorable view of the facts to the defendants that can be taken under the evidence as to the character of possession in the City Water Company of Chattanooga, they are not sufficient to preclude the necessity for notice under the terms of the optional contract as quoted above.

4. The next and last question for consideration is as to whether Kuhn's mortgage has priority over the mortgage of Green of an earlier date. It is not seriously contended that complainant is entitled to a prior lien unless Green is estopped under the facts. It is claimed that he, by his silence when he should have spoken, allowed Kuhn to make the loan of $10,000 to Morrison, taking a mortgage on the whole 175 acres of this land, believing that he was obtaining a first mortgage lien. The evidence is conflicting, and it has been with some difficulty that I have reached a conclusion upon this question. I have gone over the evidence of the various witnesses with care, and become satisfied that I would not be justified in adjudging an estoppel against Green as to the priority of his mortgage. Estoppel is not favored, and it requires a clear case to raise it. While I have more doubt upon this branch of the case than any other, my opinion is that the conclusion above stated is the correct one.

A decree may be entered in this case foreclosing this mortgage for the principal debt and 6 per cent. interest; complainant's mortgage lien, however, to be subject and subordinate to the lien of Green's mortgage, as set out in the pleadings.